UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. 21-CR-0317-CVE |
| ) | |
| ROBERT ANTONIO WOODS, ) | |
| DARREN STUART SMITH, ) | |
| ) | |
| Defendants. ) | |

**OPINION AND ORDER**

Now before the Court are the following motions: Defendant Darren Stuart Smith's Motion to Suppress and Brief in Support (Dkt. # 42); defendant Robert Antonio Woods' Motion to Suppress Evidence (Dkt. # 43); and Defendant Robert Antonio Woods' Motion for Severance (Dkt. # 44). Both defendants have filed motions to suppress evidence seized during a traffic stop that took place on April 10, 2021, on the ground that the evidence was seized in violation of the Fourth Amendment. Dkt. ## 42, 43. Robert Antonio Woods also requests a severance of his trial from that of his co-defendant, Darren Stuart Smith, because he will be prejudiced if he is required to proceed with a joint trial. Dkt. ## 44, 45.

**I.**

On April 10, 2021, Pryor Police Officer Mitchel Phillips was on patrol and he noticed a red Dodge Grand Caravan as he was stopped at the intersection of U.S. Route 69[1] and South First Street in Pryor, Oklahoma. Phillips was waiting to turn left onto Route 69, and the occupants of the Grand

---

[1] The documents submitted by the parties refer to Route 69 and Mill Street, but these are alternate names for the same roadway at the locations referenced in this Opinion and Order.

Caravan seemed visibly nervous after seeing Phillips' police vehicle. Phillips noticed that the Grand Caravan was a rental vehicle with an out of state license plate and Phillips saw a police scanner in the windshield of the vehicle, and he formed a suspicion that the vehicle was being used in furtherance of illegal activity. Phillips began following the Grand Caravan and he allegedly observed the vehicle fail to maintain its lane for approximately 100 feet. After driving approximately a mile and a half, Phillips activated his emergency lights and initiated a traffic stop, and the Grand Caravan pulled over to the side of the road. Phillips walked up to the passenger side of the vehicle and he saw a police scanner attached to the windshield.

Phillips made contact with the occupants of the vehicle and told them that he initiated the traffic stop after observing the vehicle fail to maintain its lane. The driver asked for clarification about what line on the road he allegedly crossed, because it sounded to the driver that Phillips claimed the vehicle crossed a "wide double line." The bodycam video shows that Phillips was speaking very quickly during this part of the encounter, and he testified at the suppression hearing that he was saying "white dotted line." Phillips asked the occupants of the vehicle for their driver's licenses and both men provided a Missouri identification card. Phillips confirmed that the vehicle was a rental, but the occupants of the vehicle could not produce a copy of the rental agreement and the driver, Woods, could not provide proof of insurance. Smith stated that he would look for a copy of the rental agreement on his phone, and Phillips asked Woods to sit in his patrol vehicle while he ran a records check on his computer. Phillips conducted a brief pat-down of Woods, and Woods and Phillips had a conversation in Phillips' vehicle. Phillips believed that Woods seemed unusually nervous during their conversation. Phillips initially asked Woods about his travel plans. Woods claimed that he and Smith were visiting family in Houston, and they had left for Houston on April

8, 2021. Phillips asked Woods if he had ever been in "trouble" before, and Woods admitted that he had been "arrested and stuff" for firearm and drugs offenses. Phillips asked more detailed questions about the drug charges and inquired about the length of Woods' prison sentence. Woods asked how he committed a lane violation, and he asked Phillips if he drove over "that big line right here" in front of the patrol car. Phillips said "yeah" in response to Woods' question if he crossed the "big line" directly in front of the patrol car while it was pulled onto the side of the road. Phillips asked Woods how much "weed" was in the rental vehicle, and Woods denied that there was any marijuana in the vehicle. Phillips asked whose family Woods and Smith were visiting in Houston, and Phillips asked several questions about the length of their trip to Houston. Phillips ran a records check and confirmed that Woods was on probation for drug and firearms offenses.

Phillips went to speak to Smith in the van and Woods remained in the patrol vehicle, and he asked Smith where they were coming from that day. Smith responded Texas and clarified that they were coming from Dallas. Phillips also asked Smith if he had been in trouble with the law before, and Smith responded "gun charges, murders and stuff." Smith stated that he was visiting a cousin in Dallas and they had not been there too long, but he could not recall exactly how many days they had been in Dallas. Phillips asked Smith to step out of the vehicle and he conducted a pat-down of Smith, and Phillips had Smith wait with a backup officer while Phillips performed a dog sniff of the vehicle with his canine, Kika. Kika alerted to the presence of illegal drugs in the vehicle, and Phillips conducted a probable cause search of the rental vehicle. Phillips found a flathead screwdriver in the vehicle and looked to see if any panels inside the vehicle had recently been removed. Phillips found six plastic bags containing methamphetamine pills inside of the middle row of seats, and Woods and Smith were arrested on drug trafficking charges. Phillips prepared an

3

incident report following the arrest, and the report does not mention any observations about the van prior to the alleged lane violation. Dkt. # 42-1, at 3. The report states that the van failed to maintain its lane for approximately 100 feet by crossing the white dotted inside lane divider. Id. On July 7, 2021, a grand jury returned an indictment charging Woods and Smith with drug conspiracy (count one) and possession of methamphetamine with intent to distribute (count two).

## II.

Defendants have each filed a motion to suppress the evidence seized during the April 10, 2021 traffic stop. Woods has also filed a motion for severance of his trial from that of his co-defendant. Plaintiff responds that Phillips' testimony that he observed a traffic violation is credible, and the traffic stop did not become unreasonably lengthy due to Phillips' questions about defendants' travel plans and criminal history. Plaintiff also argues that there is a presumption in favor of joint trials in conspiracy cases, and plaintiff asks the Court to deny Woods' motion for severance.

**Defendants' Motion to Suppress Evidence (Dkt. ## 42, 43)**

Defendants argue that there is no credible evidence that a traffic violation actually occurred, and the traffic stop was invalid from its inception. Defendants also argue that Phillips extended the traffic stop by asking numerous questions unrelated to the alleged commission of a lane violation, and length and scope of the encounter was unreasonable under the Fourth Amendment. Plaintiff responds that Phillips' testimony that he observed a traffic violation before initiating the traffic stop is credible, and the traffic stop did not become unreasonably lengthy due to Phillips' questioning of Woods and Smith.

The Court must initially consider whether Phillips had a valid basis to initiate a traffic stop of defendants' vehicle and whether the length of the stop was reasonable. A traffic stop is treated

as an investigative detention, and such a stop is governed by the standards set forth in Terry v. Ohio, 392 U.S. 1 (1968). United States v. Bradford, 423 F.3d 1149, 1156 (10th Cir. 2005). In determining the reasonableness of a traffic stop, a court must make two separate inquiries. The first is whether the police officer had a valid reason for initiating the traffic stop. United States v. Botero-Ospina, 71 F.3d 783, 787 (10th Cir. 1995). "[A] traffic stop is valid under the Fourth Amendment if the stop is based on an observed traffic violation or if the police officer has a reasonable articulable suspicion that a traffic or equipment violation has occurred or is occurring." Id. Second, a traffic stop must not become an unnecessarily lengthy detention, but must be limited in scope to the purpose of the initial traffic stop. United States v. Rice, 483 F.3d 1079, 1083 (10th Cir. 2007). A police officer may extend the length of the traffic stop for questioning beyond the initial purpose of the traffic stop only if the officer has "an objectively reasonable and articulable suspicion that illegal activity has occurred, or the driver voluntarily consents to further questioning." United States v. Ramirez, 479 F.3d 1229, 1243 (10th Cir. 2007).

The Court must also consider whether the length of the traffic stop was reasonable under the second prong of Terry. An officer conducting a traffic stop may request a driver's license, vehicle registration, run a computer check, and issue a citation. See United States v. Zubia-Melendez, 263 F.3d 1155, 1161 (10th Cir. 2001). An officer may also "ask questions about the motorist's travel plans and authority to operate the vehicle," in addition to obtaining the relevant documentation, without exceeding the scope of an investigative detention. United States v. Alcaraz-Arellano, 441 F.3d 1252, 1258 (10th Cir. 2006). Such questioning does not violate the Fourth Amendment as long as the questioning does not prolong the traffic stop. United States v. Villa, 589 F.3d 1334, 1339 (10th Cir. 2009); United States v. Wallace, 429 F.3d 969, 974 (10th Cir. 2005). Police must have

reasonable suspicion that criminal activity is afoot to continue a traffic stop beyond the purpose of issuing a warning or citation for the traffic violation. United States v. Kopp, 45 F.3d 1450, 1453 (10th Cir. 1995). Reasonable suspicion is a "particularized and objective basis for suspecting the person stopped of criminal activity." Ornelas v. United States, 517 U.S. 690, 696 (1996) (internal quotation marks omitted). An "inchoate and unparticularized suspicion or 'hunch' is insufficient" to support reasonable suspicion. United States v. Hall, 978 F.2d 616, 620 (10th Cir. 1992) (internal quotations and citations omitted). Reasonable suspicion "represents a minimum level of objective justification which is considerably less than proof of wrongdoing by a preponderance of the evidence." Alcaraz-Arellano, 441 F.3d at 1260 (quoting United States v. Mendez, 118 F.3d 1426, 1431 (10th Cir. 1997)). In determining whether an officer had reasonable suspicion of criminal activity, the Court does not evaluate the facts in isolation but instead construes them together based on the totality of the circumstances. United States v. Arivizu, 534 U.S. 266, 274 (2002).

The Court will initially consider whether plaintiff has established that Phillips had reasonable suspicion to believe that a traffic violation occurred, and the only evidence concerning the occurrence of the alleged traffic violation is Phillips' alleged observation that defendant's vehicle failed to maintain its lane. The Court has reviewed the available video footage of the traffic stop, and there is no video footage covering the time that Phillips allegedly observed the traffic violation.[2] Plaintiff argues that defendants have produced no "affirmative evidence" tending to contradict

---

[2] There is video footage from the exterior of Phillip's patrol vehicle as he followed defendants' vehicle shortly before the traffic stop, and the video shows defendants' vehicle maintaining its lane from the beginning of the video to the initiation of the traffic stop. The alleged lane violation took place before the forward-facing camera on Phillips' patrol vehicle began saving video footage.

Phillips' claim that he observed a lane violation, but defendants have come forward with circumstantial evidence calling Phillips' credibility on this issue into doubt. See Dkt. # 51, at 10.

The video footage shows that Phillips is repeatedly unable to clearly articulate how or when the traffic violation occurred. Phillips spoke very quickly when he initially made contact with defendants, and it difficult to understand Phillips when he told defendants that their vehicle failed to maintain a lane. Woods sought clarification from Phillips about the lane violation, because he thought that Phillips was saying that Woods crossed the "wide double line." Phillips essentially ignored Woods' request for clarification and said "yeah, no biggie," when Woods asked if he had crossed the "wide double line." Later in the traffic stop, Woods was sitting with Phillips in his patrol vehicle and he again sought clarification about the nature of the alleged traffic violation. Woods asked Phillips if he had crossed the "big double" lines right in front of Phillips' vehicle as it was pulled onto the side of the road, and Phillips was clearly indicating to the shoulder of the road, rather than the white dotted lines on the actual roadway. Phillips again responded "yeah, no biggie," in response to Woods' question, and seemed to affirm that Woods had crossed onto the shoulder in committing the lane violation. Phillips asked Woods no questions about the alleged lane violation, and Phillips made no attempt to issue a citation for a traffic violation. Phillips' questions to Woods show that he was clearly more interested in pursuing an investigation into possible drug trafficking, and he admitted at the suppression hearing that he wanted to investigate defendants' vehicle before he allegedly witnessed a traffic violation. Phillips' subjective intention for initiating the traffic stop is irrelevant if he actually observed a traffic violation. See Whren v. United States, 517 U.S. 806 (1996). However, there must be credible evidence that Phillips actually observed a traffic violation that allowed him to initiate a traffic stop. The Court finds that Phillips' vague and contradictory

explanations of the alleged traffic violation, coupled with his stated desire to search defendant's vehicle, detract from Phillips' credibility concerning his alleged observation of a lane violation.

Defendants have identified inconsistencies between Phillips' incident report and the video footage that generally raise questions as to Phillips' credibility. In his incident report, Phillips writes that he "observed the Caravan fail to maintain its lane for approximately 100 feet, crossing the white dotted inside lane divider." Dkt. # 42-1, at 3. Phillips failed to include any reference to his initial observations of defendants' vehicle that prompted him to begin an investigation, such as defendants' alleged nervousness at the sight of a police vehicle, the police scanner on the windshield, or Phillips' belief that defendants' vehicle was a rental. Phillips testified that it was these observations prior to the alleged traffic violation that prompted him to follow defendants' vehicle, but his report fails to mention the actual observations that prompted his investigation of defendants' vehicle. Phillips' report states that he was engaging in "general conversation" with Woods in his patrol vehicle, and he claims that Woods was engaging in "nervous behavior." Dkt. # 42-1, at 4. The video shows that Phillips' conversation with Woods was more in the nature of an interrogation about possible drug trafficking, and Phillips wholly failed to inquire about the alleged traffic violation during the conversation. The Court also noticed no behavior by Woods during his conversation with Phillips that suggested he was unusually nervous, and Woods did not attempt to hide his prior convictions or prison sentence from Phillips. Finally, Phillips wrote in his report that he left his patrol vehicle to "speak with Smith and get the insurance information as well as rental agreement." Id. at 4. The video footage shows that Phillips approached Smith and immediately began asking about defendants' travel plans, and he made no inquiries about insurance information or the rental agreement. The Court notes that none of the inconsistencies between the report and the video footage independently

casts substantial doubt on Phillips' credibility. However, the omissions or inconsistencies in the report gives a misleading impression that Phillips initiated a traffic stop and simply stumbled into a drug trafficking investigation, which he clearly testified at the suppression was not the case.

Defendants have also offered evidence that Phillips' alleged observation of a lane violation has been called into question in a prior case in which a defendant filed a motion to suppress, and there was video evidence available in the prior case of the alleged lane violation. The video evidence of the lane violation in the prior case was available, because Phillips promptly initiated the traffic stop after observing the lane violation.[3] Phillips testified at the suppression hearing in this case that his patrol vehicle is equipped with a forward-facing camera that will record footage one minute prior to the time that he activates his patrol vehicle's emergency lights. In this case, Phillips drove approximately a mile and a half after the alleged traffic violation before turning on his emergency lights to initiate a traffic stop, and the forward-facing camera on Phillips' vehicle did not save the footage of the alleged traffic violation. Phillips testified that he was "surprised" by how long it took from his alleged observation of a lane violation to the time he activated the emergency lights on his patrol vehicle, but he offered no explanation for his failure to more promptly pull over defendants' vehicle. The Court does not find that the mere fact that Phillips' observation of a lane violation has been challenged in a prior case means that he was necessarily fabricating the lane violation in this case or that he purposefully delayed in initiating the traffic stop. However, the Court that finds

---

[3] The prior testimony referenced by Smith's counsel suggests that the dispute in the prior case involving Phillips' observation of a lane change was more technical in nature, and defense counsel in that case was arguing whether it was necessary for a vehicle to wholly cross the dotted white lane to commit a lane violation. The Court does not interpret the arguments of counsel for Woods or Smith to raise issues such as whether defendants' vehicle partially or wholly crossed any line on the road and, in any event, the Court has no evidence to consider such a challenge in this case.

Phillips' knowledge of the recording capabilities of the cameras equipped to his patrol car and his failure to promptly initiate a traffic stop are relevant in considering the credibility of his testimony that a lane violation actually occurred.

Considering the totality of the circumstances, the Court finds that Phillips' testimony that he observed a lane violation prior to initiating a traffic stop is not credible.  The only evidence tending to support the commission of a traffic violation is Phillips' alleged observation of a lane violation. However, the video shows that Phillips was never able to clearly articulate the nature of the lane violation to defendants, and he admitted at the suppression hearing that he was looking for a reason to pull over defendants' vehicle before he allegedly observed a traffic violation.  Phillips could have promptly activated his emergency lights and the forward-facing camera on his patrol vehicle would have recorded the alleged traffic violation.  However, Phillips waited approximately a mile and a half before turning on his emergency lights, and there is no recording of the alleged lane violation.  The Court also notes inconsistencies between Phillips' report and the video footage, and the report gives a misleading impression that the drug trafficking investigation was incidental to an ordinary traffic stop for an alleged lane violation.  Without Phillips' testimony that he observed a traffic violation, plaintiff has no evidence to establish that a traffic violation occurred and the investigative detention of defendants' vehicle was invalid from its inception.[4]  The Court further finds that this is an appropriate case to apply the exclusionary rule in order to deter future Fourth Amendment violations, and the evidence seized as a result of the search of defendants' vehicle is suppressed.  United States v. Cotto, 995 F.3d 786, 795 (10th Cir. 2021).

---

[4] The Court has determined that Phillips had no basis to initiate an investigative detention, and it is unnecessary for the Court to consider the second prong of the Terry analysis as to the length and scope of the detention.

**Woods' Motion to Sever (Dkt. # 44)**

Woods requests a severance of his trial from that of his co-defendant, because he may seek to call his co-defendant, Smith, as a witness and he will be unable to do so if they are tried together. Dkt. # 44, at 3. Woods also argues that he may have antagonistic defenses to Smith and there is a "markedly different" degree of culpability between Woods and Smith. Id. Plaintiff responds that defendants are charged with drug conspiracy, and there is a strong presumption that co-conspirators should be tried together. Dkt. # 50, at 4. Plaintiff also argues that Smith will likely invoke the Fifth Amendment right against self-incrimination if called to testify at trial, and the mere potential for antagonistic defenses or the "spillover effect" of evidence against Smith are not sufficient grounds for a severance.

Pursuant to Federal Rule of Criminal Procedure 14(a), a district court may sever the trials of codefendants joined in a single indictment if a joint trial would prejudice one or more of the defendants named in the indictment. "Joint trials of defendants who are indicted together are preferred," however, "because [t]hey promote efficiency and serve the interests of justice by avoiding the scandal and inequity of inconsistent verdicts." United States v. Hall, 473 F.3d 1295, 1301-02 (10th Cir. 2007) (internal quotation omitted). If defendants have been properly joined in the same indictment, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence." Zafiro v. United States, 506 U.S. at 534, 539 (1993). A court's decision to order severance is discretionary, and a defendant bears a "heavy burden of showing real prejudice to his case." United States v. McConnell, 749 F.2d 1441, 1444 (10th Cir. 1984). Tenth Circuit precedent is clear that " '[n]either a mere allegation that [the] defendant would

have a better chance of acquittal in a separate trial, nor a complaint of the 'spillover effect' [of damaging evidence], is sufficient to warrant severance.'" United States v. Edwards, 69 F.3d 419, 434 (10th Cir. 1995) (quoting United States v. Levine, 983 F.2d 165, 167 (10th Cir. 1992)).

The Court initially notes that there is a "presumption that co-conspirators in a conspiracy trial should be tried together." United States v. Clark, 717 F.3d 790, 817-818 (10th Cir. 2013). The Court has reviewed Woods' motion and he has done nothing to rebut this presumption. Woods claims that he intends to call Smith to testify at trial, but Woods admits that Smith is likely to invoke his Fifth Amendment right against self-incrimination if he is called as a witness at trial. Dkt. # 44, at 4. Woods also claims that he will be prejudiced in a joint trial, because the defendants have antagonistic defenses and there will be a spillover effect due to Smith's higher degree of culpability. Both of these arguments are vague and speculative, and Woods has not identified a specific trial right that will be compromised by a joint trial of both defendants. Woods has not made any showing that he will be unfairly prejudiced by a joint trial of both defendants, and his motion to sever (Dkt. # 44) is denied.

**IT IS THEREFORE ORDERED** that Defendant Darren Stuart Smith's Motion to Suppress and Brief in Support (Dkt. # 42) and defendant Robert Antonio Woods' Motion to Suppress Evidence (Dkt. # 43) are **granted**, and all evidence seized as a result of the April 10, 2021 traffic stop is suppressed.

**IT IS FURTHER ORDERED** that Defendant Robert Antonio Woods' Motion for Severance (Dkt. # 44) is **denied**.

**DATED** this 6th day of April, 2022.

CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE